Dennis Wayne **BAGWELL**, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 04–97–00132–CR.**

Court of Appeals of Texas,
San Antonio.

Nov. 5, 1997.

Thomas H. Morris, III, La Vernia, for Appellant.

W.C. Kirkendall, District Attorney, Frank Follis, Assistant District Attorney, Sequin, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

Dennis Wayne Bagwell, appellant, was tried, convicted, and sentenced for capital murder in Guadalupe County. A jury found that Bagwell had killed George Barry during the course of a robbery, by stomping on his face and neck. The State waived the death penalty, and the jury sentenced Bagwell to life imprisonment.

In one point of error, Bagwell asserts that there is no evidence to corroborate the accomplice testimony used against Bagwell at trial. We affirm the judgment.

## FACTS

On September 5, 1995, a delivery person found the body of George Barry in the supply room of a local bar, Jim's Place, in Seguin, where Barry worked as a night stocker. Police arrived on the scene shortly after the discovery, and they took photographs of the body and the supply store, and dusted for fingerprints. At some point in the investigation, Bagwell became a suspect, and trial followed. By far the most incriminating evidence presented at trial was that of Bagwell's lover, Vicki Wolford, who testified after being promised immunity from prosecution by the State.

Wolford testified that on the evening of September 4, she and Bagwell met Donnie Halm, the owner of Jim's Place, at a rest stop on Highway 123. There, Bagwell sold Halm a television, stereo, and VCR, all of which belonged to a local rent-to-own store. Halm paid $200 for the equipment. Bagwell and Wolford took the money from this sale

and went to the home of Anthony Jackson, where they bought some rock cocaine for $150. The pair took the cocaine to the trailer they shared, where they smoked it, and Vicki prepared for bed. At this point, Wolford testified, Bagwell wanted to return to Seguin for more drugs—this time, marijuana. Wolford dressed, and they drove to Jim's Place. Bagwell drove around the bar a couple of times, telling Wolford he was looking for an employee, Robin Whitman, who Bagwell thought would sell him some marijuana. Bagwell had been to Jim's Place several times, had sold or tried to sell items to employees there, and knew all the employees by name.

When Bagwell didn't see Whitman, he stopped the car and went into the bar. He came back shortly and asked Wolford for a quarter. He had not found Robin and wanted to call his home. At that point, he told Wolford that he planned to rob and kill George Barry, who was in the restaurant, stocking beer for the next day. It was also Barry's job to make the night deposit for the bar. Bagwell returned to the restaurant. Wolford remained in the car. She testified that, while Bagwell was in the bar, she could hear pounding and thumping noises. Bagwell returned twenty to twenty-five minutes later, with three money bags and an injured finger. The two drove out of Seguin, stopping to move the money from the bags to Bagwell's pockets. They then headed for Jackson's, where they purchased more rock cocaine. On the drive from Jackson's to their trailer, Bagwell told Wolford that he had killed Barry by smashing his throat in with his foot. Wolford testified that Bagwell was wearing black, heavy boots the night of the murder. The next morning, the two left Seguin for San Antonio.

Very little other inculpatory evidence was presented at trial. An expert on fingerprints testified that one of Bagwell's fingerprints and one of his palm prints were found on the file cabinet near Barry's body, where the deposit money was kept. An expert on "pattern injuries" testified that he could not rule out the possibility that Bagwell's shoes had caused the injuries to Barry's face and neck. A San Antonio police officer testified to find-

ing one cloth bank bag, with the words "First Commercial" on it, in the room Wolford and Bagwell shared in San Antonio. Bar employees testified that this bag was "similar" to those used by Jim's Place. Finally, several witnesses testified that Bagwell had given inconsistent stories about how he had hurt his hand, saying at times that he had hit a black man, that he had hit a black man and robbed him, or that he had smashed his hand down on the roof of an automobile.

The defense presented no witnesses.

## DISCUSSION

 No one may be convicted on the basis of accomplice testimony without other evidence that corroborates the testimony and tends to connect the defendant with the commission of the charged offense. TEX.CODE CRIM. PROC. art. 38.14 (Vernon 1979). The test for weighing the sufficiency of the corroborating evidence is to eliminate from consideration the testimony of the accomplice witness and examine what remains to ascertain if it tends to connect the accused with the offense. *Reed v. State*, 744 S.W.2d 112, 125 (Tex.Crim.App.1988). Thus, as powerful as Wolford's testimony is, in order to allow it to serve as the basis of conviction, we must remove it from consideration and see what we are left with. The remaining evidence need not be sufficient to prove beyond a reasonable doubt that the defendant committed the crime. *Id.* at 126. Furthermore, the evidence may be considered in sum, rather than in isolated pieces. *Id.*

 Without Wolford's testimony, the State is left with four potentially corroborating pieces of testimony: the palm print, Bagwell's boots, the bank bag found in the San Antonio residence, and Bagwell's inconsistent stories about his hand injury. Only the palm print sufficiently links Bagwell to the commission of the crime.

 We do not believe the forensic testimony regarding the pattern of injuries sustained by the victim sufficiently links Bagwell to the crime. The testimony was far too equivocal to link Bagwell to the crime, absent Wolford's testimony. The best the pattern-injury expert could testify to was that he

could not rule out the boots as having caused the horizontal markings on the victim's neck and face. The forensic expert who performed the autopsy testified that his original thought had been that a tennis shoe caused the injury, but he added that the markings were also consistent with boots like Bagwell's. However, nothing was found on the boots to connect them to the crime and, in fact, pieces of black rubber found on the body were found to be inconsistent with the rubber on the soles of Bagwell's boots. Although the court of criminal appeals has found that evidence that a defendant had a gun that was merely similar to the weapon used in a crime is proper corroborative evidence, *May v. State,* 738 S.W.2d 261, 267 (Tex.Crim.App.1987), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987), this testimony does not even rise to that level. Instead, this testimony merely shows that the crime was committed, probably with some sort of shoe. Mere testimony that the crime had been committed is insufficient to link the defendant to its commission. TEX. CODE CRIM. PROC. 38.14; *Reed,* 744 S.W.2d at 126.

■ Similarly, the presence of a bank bag, even in the defendant's closet, is not sufficient. *See Nelson v. State,* 542 S.W.2d 175, 177 (Tex.Cr.App.1976) (finding that mere proximity of defendant to fruit of the crime is insufficient, without evidence that defendant had connection with, control of, or possession of the stolen property). Nothing on the bank bag identifies it as belonging to Jim's Place and, as Bagwell notes, bank bags are easy items to obtain.

■ That Bagwell told differing stories about how he injured his hand does not link him to the offense. Testimony showed that the murder was committed with a blunt instrument, almost certainly a shoe. There is no testimony at all, beyond Wolford's testimony, that would make relevant Bagwell's hand injury.

However, we believe the presence of the palm print is sufficient to tend to link Bagwell to the crime. State's witnesses testified that the storeroom where Barry's body was found was restricted to employees only. No witness had ever seen Bagwell or any customer in the storage area. Although there was evidence that Bagwell had been a somewhat regular customer at Jim's Place and had sold items to the bar's employees, there was no testimony that he had ever sold his wares in the back area. The presence of Bagwell's prints in an area where he was not supposed to be is some evidence that tends to link him to the crime.

### CONCLUSION

We find that the presence of Bagwell's palm and finger prints in a restricted area, on a file cabinet that housed the stolen money, is sufficient evidence to link Bagwell to the crime for which he was convicted. For that reason, we overrule Bagwell's point of error and affirm the judgment.